YATES, Presiding Judge.
On February 8, 1999, Leigh M. Hackney sued Thomas A. Hackney for a legal separation. She sought custody of the parties’ *1161 four minor children, child support, alimony, the marital residence, and a division of the other marital property. The husband counterclaimed for a legal separation; on May 3, 1999, he amended his counterclaim to request a divorce. He sought custody of the minor children and an equitable division of the marital assets.
Following an ore tenus proceeding, the court, on April 25, 2000, entered a detailed 20-page order, divorcing the parties. The judgment, among other things, awarded the wife custody of the minor children, with “shared parental responsibility”; ordered the husband to pay $2,500 per month in child support and included a provision under Ex parte Brewington, 445 So.2d 294 (Ala.1983), for the parties’ disabled child; and awarded the wife $1,800 per month in periodic alimony. As it pertains to this appeal, the judgment ordered:
“25. That the [husband] shall pay and be responsible for the cost of tuition, books and necessary fees for [the minor children] to enable them to attend Briarwood Christian School. Said obligation shall continue for each child for so long as each child is enrolled at Briar-wood Christian School.
[[Image here]]
“31. That the [wife] is hereby awarded all shares of common stock currently in the joint names of the parties in the First Talladega Corporation. The [husband] shall transfer said stock to the [wife] no later than May 15, 2000.
“32. That the [husband] is hereby awarded all interest he may have in the Blount Trust/Future Development Trust to include any receivables, equity interest it may have in any business (not awarded to the wife herein), accounts, cash or funds it may have in any financial institution.
“33. That the [wife] is awarded a one-half (/£) interest in the [husband’s] 401(k) Plan account with the Blount Memorial Hospital as of the date of transfer; however, said transfer shall not be less than One hundred Ten Thousand Dollars ($110,000.00). Said amount awarded to the [wife] herein is based on the balance in the [husband’s] 401(k) at the time of the trial in this cause. The [wife] shall submit a Qualified Domestic Relations Order for the Court’s approval to effectuate this transfer within sixty (60) days.
[[Image here]]
“38. That the [husband] has represented that he is to receive a Federal Income Tax refund in the amount of One Hundred Ninety-One Thousand Dollars ($191,000.00). The [husband] shall pay to the [wife] one-half of the Federal Income Tax refund representing a property settlement. Said payment is contingent upon the [husband’s] receipt of the refund mentioned hereinabove. Upon receipt, the [husband] shall pay to the [wife] the said funds within thirty (30) days.
[[Image here]]
“43. That the residence located at, to wit: 4010 Montevallo Road, Birmingham, Alabama 35213, is hereby awarded to the [husband] and the [husband] shall pay and be responsible for the outstanding mortgage indebtedness due on said residence....
“44. That the residence located at, to-wit: 1 Montcrest Road, Birmingham, Alabama 35213, is hereby awarded to the [husband] and the [husband] shall pay and be responsible for the outstanding mortgage indebtedness due on said residence. The [husband] shall further indemnify and hold the [wife] harmless from any loss or obligation due thereon. Until such time as the litigation in which the [husband] is involved with Longview Hospital and J.T. Morgan is resolved the *1162 [wife] shall have exclusive use of the premises and residence located at 1 Montcrest Road, Birmingham, Alabama 35213.
[[Image here]]
“45. That the [wife] is hereby awarded all right, title and interest in all the acreage generally known by the parties as the Blue Springs Property.
“The [husband] shall within 45 days cause said property to be released as security on any obligation owed by him or any of his separate business entities to the First National Bank of Talladega or any other lender or secured party. The [husband] may do so by either repayment of the loan to the First National Bank of Talladega in an amount sufficient to release the lien or by utilizing any property not awarded to the [wife] herein as substitute collateral.
“46. That the [wife] is hereby awarded the Brooks property. The [husband] has represented that there are no liens against this property.
“47. That the [wife] is hereby awarded the Dunston property. The [husband] has represented that there are no hens against this property.
“48. That the [wife] is hereby awarded the property known as the [Allred] property. The [husband] has represented that there are no liens against this property.
“49. That the [husband] is hereby awarded all remaining real estate in his name individually or jointly with any other person and [the husband] shall pay any outstanding indebtedness and [the husband] shall further indemnify and hold the [wife] harmless from any loss or obligation due thereon.
“50. That the [husband] is hereby awarded any and all interest, stock or ownership in and to the following business entities that he may have and the [wife] is divested of any interest therein:
“a. Blount County Health Care, Inc. (subject to Paragraph 51 below)
“b. Excel Health Services of Alabama, Inc.
“e. Excel Health Care, LLC.
“d. THA Realty, Inc.
“e. MEA Realty Partnership, LLC.
“f. Blue Springs Development, Inc.
“g. Tri-County Medical Supply
“h. Excel Farms
“The [husband] shall indemnify and hold the wife harmless from any obligation, loan, lien or loss connected with any of the above entities.
“51. The litigation between Blount County Health Care, Inc. and Diversified Health Systems, Inc. presently pending in United States District Court is subject to eventual resolution by settlement, mediation or trial. As property settlement herein the [husband] individually and as sole stockholder of Blount County Health Care, Inc. shall assign or cause to be assigned by or through Blount County Health Care, Inc. a sum each month equal to 50% of the lease payments due from Diversified Health Systems, Inc. to Blount County Health Care, Inc. (less the mortgage due Am-South Bank) to the [wife]. Said payments are intended to be an equitable division of the property/assets due [the husband] through or from Blount County Health Care, Inc. lease agreement with Diversified Health Systems, Inc.
“Said payments shall be paid to the [wife] by the 10th day of each month beginning May 2000 and shall continue for so long as the lease agreement shall remain in effect. The [husband] is charged with personal responsibility to cause Blount County Health Care, Inc. *1163 to properly distribute the lease payments referred to herein.”
The husband’s postjudgment motion was granted in part and denied in part on June 14, 2000. James T. Hackney (the husband’s brother) and Jeff Tidwell, individually, moved to intervene, both alleging that they had an interest in property awarded to the wife. The court denied both motions on June 14, 2000.
The husband appealed, arguing: (1) that the court erred in awarding the wife the Allred property, because it had been previously owned by his grandfather; the Blue Springs property, because it is used by his family in a cattle-ranching enterprise; and the Brooks property, because it adjoins his brother’s farm; (2) that the court erred in ordering that he “satisfy or substitute collateral for a secured obligation” on the Blue Springs property; (3) that the court erred in awarding the wife 50% of lease payments from “a corporation not a party to the proceeding”; and (4) that the court erred in ordering him to pay the children’s educational expenses at Briarwood Christian School.
In reviewing a judgment of the trial court in a divorce case, where the trial court has made findings of fact based on oral testimony, we are governed by the ore tenus rule. Under this rule, the trial court’s judgment based on those findings will be presumed to be correct and will not be disturbed on appeal unless it is plainly and palpably wrong. Hartzell v. Hartzell, 623 So.2d 323 (Ala.Civ.App.1993). This presumption of correctness is based on the trial court’s unique position to observe the witnesses and to assess their demeanor and credibility. Hall v. Mazzone, 486 So.2d 408 (Ala.1986). Additionally, matters of alimony and property division rest soundly within the trial court’s discretion, and rulings on those matters will not be disturbed on appeal except for a plain and palpable abuse of discretion. Welch v. Welch, 636 So.2d 464 (Ala.Civ.App.1994). Matters of alimony and property division are interrelated, and the entire judgment must be considered in determining whether the trial court abused its discretion as to either of those issues. Willing v. Willing, 655 So.2d 1064 (Ala.Civ.App.1995). Factors the trial court should consider in its award of alimony and its division of property include the earning abilities of the parties; the future prospects of the parties; their ages and health; the duration of the marriage; the parties’ station in life; the marital properties and their sources, values, and types; and the conduct of the parties in relation to the marriage. Id., at 1067. Further, a division of marital property in a divorce case does not have to be equal, only equitable, and a determination of what is equitable rests within the sound discretion of the trial court. Id.
The court heard testimony for eight days; the testimony resulted in a voluminous record. Suffice it to say that there was sufficient evidence to support the trial court’s judgment. The parties married in June 1983 and lived together until October 1998. At the time of the marriage, the husband and wife were both employed in the healthcare field. The wife testified that following the birth of their first child in 1985, she resigned her position in healthcare administration and became a housewife. She stated that for the first few years of their marriage, she assisted her husband in establishing a medical-supply company. She stated that she has been the primary caregiver for the parties’ four children, including the youngest child, who was born with severe birth defects and has special needs. Regarding the marital assets, the wife stated that her husband had started numerous business ventures during the marriage, including *1164 healthcare services, a cattle operation, farming, and developing real estate; and that he had controlled all of the parties’ financial decisions. She stated that they argued about the marital assets because he would not include her in any of the decision-making. During the marriage, she said, he had purchased two marital residences located on Montevallo Road and Montcrest; the Allred, Blue Springs (lake), Brooks, and Korrect property; the Dunston house; the Gannoway property; and the First National Bank Building. The record indicates that the wife currently works part-time at a nursery school, earning $7.50 per hour; that she has one retirement account with Merrill Lynch worth $74,000; and that she is co-owner of stock in the First National Bank, valued at $95,000.
The husband gave vague and conflicting testimony regarding his assets and liabilities. We note that the court sanctioned the husband $5,000 for failing to comply with discovery requests. The record indicates that during the marriage the husband established numerous corporate entities, including Blount Memorial, Inc.; Blount Memorial Foundation; Excel Health Services, Inc., Excel Health Services, L.L.C.; Graysville Hospital; Blount County Health Care, Inc.; Medical Equipment of Alabama, Inc., and Medical Equipment Leasing. The husband admitted that all of the businesses were either partly or solely owned by him. According to the husband, his wife was co-owner of the First National Bank stock, but all other assets and property were solely in his name. He stated that he had not filed an income tax return for the past several years; however, in 1991, he had reported income of $1,232,709; that he currently had investment accounts totaling over $500,000 and Series E bonds valued at $80,000 to $90,000; that he was due a federal income tax refund of $191,000 (an offset from business losses/deductions claimed after 1991); and that he expected the current litigation involving one of his businesses to net him a profit of $20,000 per month in lease payments.
The wife’s expert witness, Bruce L. Gordon, a corporate attorney, testified regarding the husband’s assets and corporate structures. He stated, in part, that the husband had $750,000 in equity in a nursing home (Blount County Health Care); $800,000 in a trust (Blount Trust) and that the trust was owed $2.4 million from another of the husband’s corporations; $3.2 million in accounts receivable; that Blount Medical Supply earned $718,000 and TriCounty Medical Supply earned $220,000 in 1999; that Blount Medical Equipment Leasing had a book value of $156,000; that the husband’s real-estate holdings were valued at $1.75 million; that the husband was expected to net at least $16,000 per month in lease payments as a result of pending litigation; and that he had numerous investment accounts.
We find the husband’s arguments on appeal without merit. Regarding the children’s educational expenses, the husband stated that he had paid approximately $5,000 for them to attend Briarwood Christian School within the past year and that he was “willing to do whatever I can to make sure the children go to that school.” Therefore, the trial court did not abuse its discretion in requiring the husband to continue paying for the children’s education. See Etheredge v. Etheredge, 730 So.2d 245 (Ala.Civ.App.1999).
Regarding the property division, the husband testified that before the marriage he had acquired some property located near to, or adjoining, his family’s property. However, there was uncontradicted testimony that each of the properties awarded to the wife was purchased during *1165 the marriage. We find no evidence indicating that the Allred property was inherited or was a gift to the husband or that the husband’s brother had an interest in the Brooks property. Further, there is ample evidence indicating that the husband has substantial financial resources to substitute another property for the Blue Springs property, which is currently pledged as security/collateral against a line of credit with the First National Bank of Talladega. Accordingly, the trial court did not err in awarding the wife real property that was titled only in the husband’s name. See T.K.T. v. F.P.T., 716 So.2d 1235 (Ala.Civ.App.1998).
Last, as to the lease payments awarded to the wife as part of a property division, the husband admitted that he owns 100% of Excel Corporation, which is the parent company of Blount County Health Care, Inc. He stated that upon the resolution of current litigation he expected to net approximately $20,000 per month in lease payments from an out-of-state provider. Therefore, it was within the trial court’s discretion to award the wife 50% from the net lease payments if the husband collects them. See Lyons v. Lyons, 340 So.2d 450 (Ala.Civ.App.1976).
Accordingly, the judgment of the trial court is due to be affirmed.
The wife’s request for an attorney fee on appeal is granted in the amount of $7,500.
AFFIRMED.
CRAWLEY, THOMPSON, PITTMAN, and MURDOCK, JJ., concur.